STEVEN G. KALAR
Federal Public Defender
JOHN PAUL REICHMUTH
Assistant Federal Public Defender
555 - 12th Street
Suite 650
Oakland, CA 94607-3627
Telephone: (510) 637-3500

Counsel for Defendant Ratliff

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | No. CR 13-00352-YGR |
| | ) | |
| Plaintiff, | ) | JAMES RATLIFF'S REVOCATION |
| | ) | HEARING MEMORANDUM |
| vs. | ) | |
| | ) | Date:  Nov. 13, 2013 |
| JAMES RATLIFF, | ) | Time:  9:00 a.m. |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

By way of a petition filed on June 3, 2013, United States Probation has alleged that James Ratliff violated the condition of his supervised release that he not commit any federal, state, or local crime. Specifically, the petition alleges that on April 17, 2013, Mr. Ratliff violated sections 236 and 273.5 of the California Penal Code by committing acts amounting to false imprisonment and domestic violence. The government does not include the alleged victim on its witness list.

For the reasons stated herein, Mr. Ratliff respectfully seeks a court order excluding all out-of-court statements of the alleged victim in this case. He should not be punished merely because someone in the community, who was angry with him and who has been convicted of a crime involving dishonesty, told police officers he did something wrong.

Revocation Memo                                        1

**I.      DISCUSSION**

"[T]he liberty of a parolee, although indeterminate, includes many of the core values of unqualified liberty and its termination inflicts a 'grievous loss' on the parolee and often on others." *Morrissey v. Brewer*, 408 U.S. 471, 482 (1982).  Indeed, not only the parolee (or probationer) but also society at large "has an interest in not having parole revoked because of erroneous information," and in "treating the parolee with basic fairness: fair treatment in parole revocations will enhance the chance of rehabilitation by avoiding reactions to arbitrariness." *Id.* at 484.

Accordingly, at any revocation hearing the probationer "must have an opportunity to be heard and to show, if he can, that he did not violate the conditions." *Id.* at 488.  At a bare minimum, the requirements of due process at a revocation hearing include, *inter alia,* (1) "disclosure to the parolee of evidence against him"; (2) the "opportunity to be heard in person and to present witnesses and documentary evidence"; and (3) "the right to confront and cross-examine adverse witnesses (unless the hearing officer specifically finds good cause for not allowing confrontation)." *Id.*

**A. The Court Should Exclude The Alleged Victim's Out of Court Statements**

As the Supreme Court held in *Morrissey*, fundamental due process requires the production of adverse witnesses at a revocation hearing unless there is "good cause for not allowing confrontation." *Id.*  Thus, Mr. Ratliff has a due process right to confront adverse witnesses unless the government can show that in the interests of justice the witness cannot and should not be produced. *See United States v. Hall*, 419 F.3d 980 (9th Cir. 2005); *see also* Fed. R. Crim. P. 32.1 (b)(2)(C).

The issue in *Hall* was whether the accused in a supervised release violation hearing had the right under the Sixth Amendment to confront adverse witnesses.  Although the court noted that he did not have such a right because the supervised release hearing was not part of the criminal prosecution, the court nonetheless held that the defendant had a due process right to

Revocation Memo                                        2

confront witnesses.[1]  *Id.* at 986.  This ruling was based on the Ninth Circuit's earlier decision in *United States v. Comito*, 177 F.3d 1166 (9th Cir. 1999).

The issue before the court in *Comito* was whether the introduction of hearsay evidence in a supervised release violation hearing satisfied the defendant's due process right to confront adverse witnesses.  The facts of the case revealed that the defendant had been charged with various supervised release violations, one of which was based upon statements allegedly made by the defendant's ex-girlfriend to a probation officer that the defendant had engaged in fraudulent behavior.  *Id.* at 1168.  At the district court's revocation hearing, the court allowed the government to introduce the fraud allegations through the testimony of the probation officer, rather than the girlfriend herself.  *Id.*  The defendant objected, claiming that his right to confront adverse witnesses was violated by the allowance of this hearsay testimony.  *Id.*

The Ninth Circuit agreed with the defendant and reversed the revocation order.  The court first concluded that a defendant had a due process right to confront adverse witnesses at a supervised release revocation proceeding, just as a defendant had such a right in a probation and parole revocation hearing.  *Id.* at 1170.  While the court acknowledged that the right to confront adverse witnesses was not absolute, and could be circumvented by a showing by the government that there was good cause not to call a given witness, the question whether the government satisfied the good cause test in turn depended upon a balancing test.  *Id*. at 1171-72.  This

---

[1]*Accord, Barnes v. Johnson*, 184 F.3d 451 (5th Cir. 1999) (explaining that due Process Clause requires certain minimal safeguards to protect the limited liberty interest at stake in a parole revocation hearing, including the right to confront and cross-examine adverse witnesses unless the hearing officer specifically finds good cause for not allowing confrontation); *United States v. Simmons*, 812 F.2d 561 (9th Cir. 1987) (explaining that probationers and parolees have a right to confront and cross-examine adverse witnesses unless a judge finds good cause not to allow confrontation); *United States v. Martin*, 984 F.2d 308 (9th Cir. 1993) (explaining that the Due Process Clause requires a balancing test for parole and probation revocation hearings); *United States v. Kindred*, 918 F.2d 485 (5th Cir. 1990) (same); *United States v. Bell*, 785 F.2d 640 (8th Cir. 1986) (same); *United States v. Penn*, 721 F.2d 762 (11th Cir. 1983) (same); *United States v. Myers*, 896 F. Supp. 1029 (D. Or. 1995) (finding police reports insufficient; defendant's interest in cross-examination outweighed the government's interest in not producing a witness under the balancing test required by the Due Process Clause).

balancing test required the court to weigh the significance of the defendant's right to confrontation against the government's explanation as to why the witness could not, or was not, called at the hearing. *Id.*

This "good cause" standard necessitates a case-by-case assessment rather than a bright-line rule. In any given case, "the court must weight the releasee's interest in his constitutionally guaranteed right to confrontation against the Government's good cause for denying it." *Id.* at 1170. "The weight to be given the right to confrontation . . . depends on two primary factors: the importance of the hearsay evidence to the court's ultimate finding and the nature of the facts to be proven by the hearsay evidence." *Id.* "The more significant particular evidence is to a finding, the more important it is that the releasee be given an opportunity to demonstrate that the proffered evidence does not reflect verified fact." *Id.* (quoting *United States v. Martin*, 984 F.2d 308, 311 (1993)) (internal quotes omitted).

The other side of the balance—the strength of the government's cause for denying the confrontation right—depends on "both the difficulty and expense of procuring [the] witness[] and the traditional indicia of reliability borne by the evidence." *United States v. Martin*, 984 F.2d 308, 311 (1993). Good cause may exist where the government is unable to locate the witness "despite substantial efforts." *United States v. Hall*, 419 F.3d 980, 988 (9th Cir. 2005). When, however, the witness is potentially available to the government and the government cannot explain its failure to produce her, the confrontation right cannot be denied. *See Comito*, 177 F.3d at 1172.

Applying that test to the facts before it, the court in *Comito* determined that the statements of the defendant's girlfriend that the defendant had engaged in criminal activity were crucial to the revocation determination. *Id*. at 1171. Moreover, because the statements by the girlfriend to the probation officer were unsworn hearsay statements, they were, as the court put it, "the least reliable type of hearsay." *Id.* Thus, the defendant's "interest in asserting his right to confrontation [was] at its apogee." *Id.* Further, the court concluded that the government had not

Revocation Memo                                      4

shown good cause for its failure to produce the ex-girlfriend at the hearing. As a result, the defendant's constitutional rights had been violated. *Id.* at 1172.

In *Hall*, unlike in *Comito*, hearsay testimony was allowed under the court's balancing test because the alleged victim of Hall's domestic violence could not be located before the hearing. *Hall*, 419 F.3d at 984. The court explained that Hall's due process rights were not violated because the non-hearsay evidence of domestic violence (including medical records for which there was a hearsay exception, photographs and witness testimony) was sufficient to prove the violation. *Id.* at 987. "Hall's interest in excluding hearsay evidence relevant to the domestic violence allegation was thus weak, especially when weighed against the government's good cause for not producing [the victim]." *Id.*

It is clear under the reasoning of both *Comito* and *Hall* that any attempt to offer the hearsay statements of the alleged victim in this case would violate the Due Process Clause. On the government interest side of the balancing test, the availability and reliability side, we have an alleged victim who could have been called by the government, and we have hearsay statements that are unreliable for multiple reasons. The alleged victim in this case allegedly came to a court appearance and spoke to the Probation Officer. The government can not therefore claim difficulty in securing her appearance. As for reliability, The statements are unsworn, placing them in the category of "least reliable" forms of hearsay. While the statements in this case were made to law enforcement, they were made after the alleged battery, when the alleged victim was no longer in alleged immediate danger. Under these circumstances, no well-established exception to the hearsay rule applies. *See Crawford v. Washington*, 541 U.S. 36, 58 n.8 (2004) (noting that traditional hearsay exception for spontaneous declarations required that statements be made "immediat[ely] upon the hurt received, and before [the declarant] had time to devise or contrive any thing for her own advantage") (citation omitted). Adding to the unreliability factor, according to a Rap Sheet provided to the defense by the government, the alleged victim has been convicted of a violation of Cal. Penal Code section 530.5(A), identity theft, and to have violated

Revocation Memo                                    5

her probation in that case.  Worse still, the alleged victim, who knew that Mr. Ratliff was on Supervised Release, also stated that the argument began when she discovered that Mr. Ratliff had been communicating with another woman.  The declarant thus had a motive to harm Mr. Ratliff.

The pro-Confrontation side of the balancing test, the nature and importance of the hearsay statements, leans  heavily in favor Mr. Ratliff's right. Unlike in *Hall*, where there was a witness to the assault, the declarant's testimony in this case is crucial to any finding of a violation.  The only evidence of the occurrence of an unlawful assault in this case or of the identity of the assailant is the statements of the alleged victim.  And even if a physical altercation took place between Mr. Ratliff and the alleged victim, that does not mean that Mr. Ratliff committed a crime.  The details of the incident are still crucial to any legal determination of a violation.  There remains the question whether, if he did contact the victim, Mr. Ratliff was legally justified in doing so.   The alleged victim claimed that the altercation began when she allegedly found evidence that he was communicating with another woman; it was she, then, who had the motive to be very angry with Mr. Ratliff.  The physical evidence appears to be inconsistent with the alleged victim's account, as well.  The photographs of the alleged victim show no marks of any kind on the alleged victim's abdomen, for example, but the alleged victim claims that she was punched in the ribs and kicked in the stomach.  One of the most obvious marks on the alleged victim is on her knuckles, suggesting that she punched something or someone, yet her account to officers makes no such claim.  The court must decide whether the alleged victim is minimizing her own conduct and magnifying that of Mr. Ratliff.  It cannot do so without observing the alleged victim and allowing Mr. Ratliff's counsel the ability to question her.  For these reasons, Mr. Ratliff respectfully requests that the government be ordered to produce adverse witnesses at any revocation proceeding in this matter.  The hearsay evidence is not just important but indispensable to the Court's ultimate finding in this case.

Given the importance of the hearsay evidence in this case and the absence of good cause for denying confrontation, the *Comito* scale tips heavily in favor of excluding the hearsay

Revocation Memo                                6

evidence.  Should the government wish to proceed to a revocation hearing, the government must produce the alleged victim for confrontation and cross-examination.

## II.      CONCLUSION

For the reasons stated, Mr. Ratliff respectfully moves the Court to exclude the alleged victim's hearsay statements from the revocation hearing.  Otherwise, Mr. Ratliff is in danger of being imprisoned based on the unsworn and untested word of a spurned former alleged romantic partner who has been convicted of a crime involving dishonesty.

Dated: November 8, 2013

Respectfully submitted,

STEVEN G. KALAR
Federal Public Defender

/s/

JOHN PAUL REICHMUTH
Assistant Federal Public Defender

Revocation Memo                                    7