**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>vs.<br><br>JAMES RATLIFF,<br><br>Defendant. | Case No.: 13-CR-0352 YGR<br><br>**ORDER DENYING PETITION TO REVOKE SUPERVISED RELEASE** |

This case arises from allegations that Defendant James Ratliff violated the terms of his supervised release conditions by violating California law when a domestic violence incident allegedly occurred on December 2, 2012 between Defendant and a female individual ("the Incident"). The Hayward Police Department responded to the scene and created a Case Report. The Alameda County District Attorney's Office has not filed formal charges.

On June 3, 2013, the Government filed a Form 12 Petition for violation of Defendant's supervised release conditions relating to the Incident. On November 13, 2013, the Court held an evidentiary hearing on the Government's Petition. Each party filed hearing memorandums in advance thereof. (Dkts. 14 and 15.) No direct eyewitnesses of the Incident testified. Rather, the Government offered the testimony of two individuals on scene who witnessed the aftermath, the responding police officer, and the probation officer who communicated with the alleged victim. Defendant offered the testimony of the alleged victim's sister.

Having carefully considered the papers submitted, the testimony of the witnesses, and the argument of counsel, for the reasons set forth below, the Court **DENIES** the Petition.

I.      **PROCEDURAL HISTORY AND CURRENT PETITION**

The parties do not dispute the procedural history or current status of the case which is set for in the Government's Memorandum:

> On January 13, 2006, Judge Wayne R. Andersen of the United States District Court for the Northern District of Illinois sentenced Defendant to fifty-five months of imprisonment and five years of supervised release after defendant entered a plea of guilty to possession with intent to distribute cocaine in violation of 21 U.S.C. 841(a)(1). Defendant's supervision commenced on December 18, 2009. On December 2, 2012, the Hayward Police investigated an incident in which victim M.M. reported that defendant grabbed, punched, and choked her. On June 3, 2013, the defendant's Probation Officer filed a Petition for Summons for Offender Under Supervision, alleging that defendant's conduct on December 2, 2012, violated the condition of his release that he not commit another federal, state, or local crime. (Dkt. No. 2). The Petition specifically alleges that the defendant violated California Penal Code Sections 273.5 – Domestic Violence and 236 – False Imprisonment.

(Dkt. 14-2:4-13.) The Government proceeded with the Petition on the basis that defendant violated the terms of his supervised release which required that he not commit another federal, state, or local crime. In particular the Government alleges that Defendant the Incident which occurred in Hayward violated the following California Penal Code Sections:  (i) Section 241(a) – simple assault;  (ii) Section 243(a) – simple battery;  Section 243(e)(1) – battery on a person with whom defendant is in a dating relationship; and Section 236 and 237 – false imprisonment accomplished by violence, menace, fraud, or deceit.

II.     **LEGAL STANDARD**

**A.  Legal Framework**

Title 18 U.S.C. § 3583(e)(3) provides that to revoke a defendant's supervised release, the district court must find by a preponderance of the evidence that a defendant violated a condition of supervised release.  *See e.g., United States v. Verduzco*, 330 F.3d 1182, 1184 (9th Cir. 2003); *Johnson v. United States*, 529 U.S. 694, 700 (2000) ("Although such violations often lead to reimprisonment, the violative conduct need not be criminal and need only be found by a judge under a preponderance of the evidence standard, not by a jury beyond a reasonable doubt."); *see United States v. King*, 608 F.3d 1122, 1126-1127 (9th Cir. 2010).

Federal Rule of Evidence 1101(d)(3) specifies that the Federal Rules of Evidence do not apply in proceedings related to the revoking of probation. Further, hearsay evidence is admissible. As parole, probation, and supervised release revocation hearings are "constitutionally indistinguishable and are analyzed in the same manner," the Federal Rules of Evidence do not apply in proceedings related to the revoking of supervised release. *United States v. Hall*, 419 F.3d 980, 985 (9th Cir. 2005); *see United States v. Comito*, 177 F.3d 1166, 1170 (9th Cir. 1999) (noting that the Supreme Court and the Federal Rules of Criminal Procedure have extended the same minimum due process rights to all three types of revocation proceedings); *see also United States v. Walker*, 117 F.3d 417, 421 (9th Cir. 1997) ("We...hold that the Federal Rules of Evidence do not apply to proceedings to revoke supervised release.").

However, a Court must also weigh a defendant's interest in his right to confrontation against the Government's good cause for denying it. *United States v. Comito*, 177 F.3d at 1170. As stated in *Walker*:

> The defendant's right to confrontation is weighed under the specific circumstances presented. In conducting the balancing test, the trial court may consider the importance of the evidence to the court's finding, the releasee's opportunity to refute the evidence, and the consequences of the court's finding. The trial court might also consider the difficulty and expense of procuring witnesses and the traditional indicia of reliability borne by the evidence.

117 F.3d 417 at 420. Particularly apt here, the Court should consider the difficulty of securing the testimony of domestic violence victims. *See United States v. Carthen*, 681 F.3d 94, 101 (2d Cir. 2012). On the other hand, at any revocation hearing the probationer must also have "an opportunity to be heard and to show, if he can, that he did not violate the conditions." *Morrissey v. Brewer,* 408 U.S. 471, 488 (1982).

### III.   FACTUAL FINDINGS AND APPLICATION TO PENDING PETITION.

The testimony in this case revealed that an incident involving the Defendant and the alleged female victim did occur; the issue of who caused the occurrence was far from conclusive:

The Incident occurred on a Sunday morning in a commercial office park in Hayward, inside certain premises used for business purposes (and apparently makeshift sleeping quarters).

Ultimately, the Incident moved from the inside into the open-air parking lot. The Government called the following four witnesses:

    (i) Bobbit Elvina who heard the alleged victim screaming and saw, from a distance, the two individuals in an-ongoing heated discussion while standing in the parking lot;

    (ii) Richard Garcia, Mr. Elvina's co-worker who had been inside and who came out after Mr. Elvina retrieved him;

    (iii) Officer Rodney Johnson, a 13-year Hayward Police Department veteran, who responded to the scene, engaged with the alleged victim after the fact, and thereafter, took her statement and pictures at the police department; and

    (iv) Jenna Russo, United States Probation Officer, who interacted with the alleged victim twice; each time preceding Defendant's appearance at status conferences in the courthouse.

Defendant called the alleged victim's sister.

The Court finds that as follows: On December 12, 2012, Defendant and a female (who the Court will refer to as M.M.) were engaged in a heated argument. Based upon the photographic evidence, the Court notes that M.M. is substantially smaller than Defendant. M.M. claimed that Defendant beat her up after she was upset that she had seen a note on a computer from Defendant to another woman. However, her rendition of the facts was not consistent:

Under one version of M.M.'s story told to Officer Johnson on the day of the Incident, Defendant beat her up and robbed her. More specifically, Defendant grabbed her by the arms, choked her with a nylon rope, got on top of her, punched her in the ribs, and put a bag around her neck. M.M. grabbed a gun but Defendant took it away from her. Defendant then dragged M.M. by the hair, threw her outside with all her stuff, and kicked her. Pictures showed recent bruising on a knuckle, wrist, eye and back shoulder and redness on the wrists. However, the pictures also showed a lack of redness, bruising, or trauma to the right or left torso or to the neck. (Prosecution Exhibits 11, 14-15, 18-22, and Defense Exhibits 101-104.) At the time of Officer Johnson's initial encounter with M.M., she was behaving erratically and yelling. She evaded his questions, walked randomly around the premises yelling about Defendant having thrown her cell phone over the

building. Notwithstanding the erratic behavior, Officer Johnson, a seasoned officer, found her credible.

Under a second version, M.M. told Probation Officer Russo that after M.M. confronted Defendant about the message to another woman, he grabbed her by the neck and put her left arm behind her back. The two struggled, ultimately resulting in Defendant standing on her face with his shoes on. After M.M. broke free, Defendant brandished a gun at her which she was able to both take from him and secure. She then ran outside. He grabbed her by the head, threw her to the ground, and began kicking her.

At some point after the two moved outside, Mr. Elvina witnessed a confrontation from a distance of about five car lengths. He did not see Defendant kicking M.M. while she was on the ground. He only recalls seeing Defendant make an upward swinging motion with this arm and fist. Mr. Elvina could not be sure whether Defendant had made contact; it happened too quickly. Mr. Garcia, who came outside later, did not even see an encounter involving Defendant but witnessed M.M. crying because, she said, of her encounter with Defendant. Mr. Garcia described M.M.'s demeanor as scared, violated, angry, upset and shaking, but oddly fixated on getting her cell phone back and wanting to re-engage with Defendant.

M.M. refused to testify claiming that she had been drunk and all she could remember was her stuff being thrown out. Officer Johnson did not believe that she was inebriated. Called as a defense witness, M.M.'s sister testified that M.M. had been addicted to methamphetamine for approximately seven years. In general, the witness did not trust M.M. or believe her to be truthful. She testified that when M.M. gets angry, she threatens, goes off on a tangent, and tries to hit or attack the person with whom she is angry. This witness, unlike her sister, holds a steady job at Safeway and herself has been the subject of M.M's tirades.

Based on the evidence presented, the Court finds that while an Incident did occur between Defendant and M.M. on December 12, 2012, it does not find that the preponderance of the evidence supports a finding that Defendant violated California Penal Code sections Section 241(a) for simple assault; Section 243(a) for simple battery; Section 243(e)(1) for battery on a person with whom defendant is in a dating relationship; and Section 236 and 237 – false imprisonment accomplished by

violence, menace, fraud, or deceit.  Here, given the inconsistencies in M.M.'s stories, her proclivity for being quick to anger and to attack others, and her disposition and erratic behavior on the day of the Incident, the Court finds that the most reasonable interpretation of the evidence presented was that M.M. attacked Defendant and he merely tried to restrain her and protect himself.

This interpretation is consistent with the evidence presented.  First, the pictures taken of M.M. do reflect that M.M.'s wrists were bruised.  However, there is no showing of trauma to her neck, ribs, or face which should exist, to some extent, if she had been strangled, kicked in the ribs, or stepped upon. Rather, the evidence more persuasively shows that Defendant was attempting to restrain M.M. during another tirade caused by her reaction to his communications with another woman.  Accordingly, the Government has failed to show by a preponderance of the evidence the elements necessary for a finding of the various forms of battery charged, that is, the willful or unlawful use of force on another's person.

With respect to the charge for false imprisonment of M.M., Penal Code section 236 defines the charge as the "unlawful violation of the personal liberty of another."  No persuasive evidence exists that M.M.'s personal liberty was restrained or confined or that she was detained to remain on the premises by any means, much less violence or menace.  To the contrary, the evidence is that she was forced to leave.  Accordingly, this charge too fails.

**IV.    CONCLUSION**

Thus, for the reasons set forth above, the Petition to Revoke Supervised Release is **DENIED**.

**IT IS SO ORDERED**.

Date: January 6, 2014

_____
**YVONNE GONZALEZ ROGERS**
**UNITED STATES DISTRICT COURT JUDGE**